# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ANTONIO MATOS,

                Plaintiff,

    v.                                           Case No. 06-CV-1011

CITY OF RACINE, BRAD SPIEGELHOFF,
S. KELAND, MICHAEL MAHNKE,
D. LANGENDORF, and JON PRINCIPE,

                Defendants.

_____

# ORDER

On September 23, 2006, plaintiff Antonio Matos ("Matos") filed a complaint against the named defendants alleging violations of the Fourth and Fourteenth Amendments of the United States Constitution for which he seeks money damages pursuant to 42 U.S.C. § 1983. Specifically, Matos alleges defendants, while acting under color of law as officers in the Racine Police Department, illegally stopped Matos and used excessive force in arresting him. Matos further alleges he was denied equal protection of the laws, and that the officers acted negligently and with malicious intent. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").

## BACKGROUND

On the rainy evening of January 11, 2005, Matos, then an officer with the Milwaukee Police Department ("MPD"), and fellow MPD detective Marilyn Francis ("Francis") were working undercover in the city of Racine, Wisconsin, as part of a

multi-jurisdictional task force targeting drug traffickers. (Defs.' Proposed Findings of Fact ("DPFF") ¶¶ 8, 14, Docket #22). The task force included members of the MPD, Racine Police Department ("RPD"), Racine County Sheriff's Department and the Federal Bureau of Investigation ("FBI"). (Pl.'s Proposed Findings of Fact ("PPFF") ¶¶ 4, 6, 13, Docket #25). On that particular day, the task force targeted a suspected drug dealer operating out of a liquor store located on Douglas Avenue in Racine. (PPFF ¶ 7). Matos and Francis participated in a controlled buy of cocaine at the store. (DPFF ¶ 14). At least one member of the RPD participated in the task force. However, the RPD was never made aware of the specific operation taking place that evening. (DPFF ¶ 13).

After completing the controlled buy, the task force executed a search warrant on the liquor store. (DPFF ¶ 15). Matos and Francis remained in their vehicle double parked in front of the store as other members of the task force carried out the search. (DPFF ¶¶ 16-17). Matos occupied the driver's seat, and Francis sat in the front passenger seat. (DPFF ¶¶ 15-16). Shortly after Matos stopped his vehicle, Officer Brad Spiegelhoff of the RPD, who was not part of the undercover operation, pulled his marked squad car up next to Matos's vehicle facing the opposite direction and attempted to make contact with Matos.[1] (DPFF ¶ 18). Spiegelhoff stated "Hey, you, what are you doing?" (PPFF ¶ 24). Matos responded that he and Francis were "police officers doing an undercover drug operation," and that they were "trying to

---

[1]Matos testified at his deposition that he had stopped his vehicle in front of the liquor store only thirty to forty-five seconds before Officer Spiegelhoff arrived. (Thomsen Aff., Ex. 1, 58, Docket #28); PPFF ¶ 23).

-2-

make a positive ID of a suspect." (PPFF ¶ 25). Spiegelhoff then asked whether Matos and Francis worked for the local sheriff's department, to which Matos responded, "yeah." (PPFF ¶ 25). According to Spiegelhoff, Matos then "waived him off" and directed his attention back towards the liquor store. (PPFF ¶ 27; DPFF ¶ 23). Spiegelhoff did not ask for identification from Matos or Francis, and neither Matos nor Francis showed identification to Spiegelhoff. (PPFF ¶ 28).

After making initial contact with Matos and Francis, Spiegelhoff made a u-turn in his squad, pulled up behind Matos's vehicle and activated his emergency lights. (DPFF ¶¶ 24-25). At his deposition, Spiegelhoff testified that he notified the RPD dispatcher that he was conducting a traffic stop on a vehicle, and that the occupant claimed to be with the sheriff's department. Spiegelhoff also told the dispatcher that he did not believe the vehicle's occupants were law enforcement officers, and requested that the dispatcher send a second "cover" RPD officer to the scene. (DPFF ¶ 26). The RPD dispatcher obliged, informing fellow RPD officers of a "traffic stop, possible man with a gun." (PPFF ¶ 36).

The situation quickly escalated when Matos "slowly ease[d]" his vehicle away from Spiegelhoff and the liquor store. (PPFF ¶ 48; DPFF ¶ 28). Spiegelhoff activated his siren and pulled his squad car forward, but remained behind Matos's vehicle. (PPFF ¶ 48). Matos stopped his vehicle after moving about 50 to 100 yards. (DPFF ¶ 28; PPFF ¶ 48). Then, without approaching Matos's vehicle,

-3-

Spiegelhoff ordered Matos to exit the vehicle.[2] (DPFF ¶¶ 27-30). Matos complied and exited his vehicle. (PPFF ¶ 61). While exiting the vehicle, Matos brought his hands together, which Spiegelhoff interpreted to be clapping.[3] (DPFF ¶ 30-31). Matos also stated something to the effect of "I'm a cop, what's going on" or "what's the problem here." (DPFF ¶ 32 and Pl.'s Resp. to Def.'s Proposed Findings of Fact ¶ 32, Docket #26).

At some point, other task force members inside the liquor store became aware of the traffic stop involving Matos and Francis. Mark Barrows, an investigator from the RPD participating in the undercover operation, got on his radio and informed a RPD dispatcher that the subject of the traffic stop on Douglas Avenue was "one of ours." (PPFF ¶ 40). It is unclear whether any of the responding RPD officers heard Barrows's transmission. By the time Matos exited his vehicle, RPD officers Keland, Mahnke, Langendorf, and Principe had arrived on the scene with guns drawn. (DPFF ¶¶ 29-30, 32-33; PPFF ¶ 63). As Matos was exiting the vehicle, officers had their firearms trained on both Matos and Francis. (PPFF ¶¶ 63, 66). From inside the vehicle, Francis called a fellow MPD detective who was inside the nearby liquor store, stating "you better get out here, I think they're going to shoot Tony [Matos]." (PPFF ¶ 67). Investigator Barrows was asked to go outside and identify Matos and Francis as undercover officers. (PPFF ¶ 67). Barrows walked over to the scene and

---

[2] Several other officers arrived on the scene around this time. (DPFF ¶¶ 27, 29-30).

[3] In his deposition, Matos testified that he brought his hands together and apart in order to show RPD officers that he was not holding a weapon. (Thomsen Aff., Ex. 1, 114-15, Docket #28).

told Keland and Langendorf that Matos was "one of our people." (PPFF ¶ 77). Officer Langendorf admits to hearing Barrows, but Langendorf and the other RPD officers on the scene continued with the arrest, ordering Matos back toward a squad car. (PPFF ¶ 78; DPFF ¶ 36).

Officer Matos testified that he repeated to RPD officers that he was a cop. (PPFF ¶ 70). Spiegelhoff told Matos to "do as you're told, you're already impersonating a police officer." (PPFF ¶ 80) RPD officers continued ordering Matos to put his hands up, and Spiegelhoff then ordered Matos to turn around "like the Hokey Pokey" and walk backward towards the RPD officers. (PPFF ¶¶ 72, 82; DPFF ¶¶ 34, 36). The parties dispute the extent to which Matos complied with these orders, and whether or not Matos was holding his police identification in his hand. (PPFF ¶¶ 89, 91; DPFF ¶¶ 33, 34, 36). Spiegelhoff then ordered Matos to his knees, but Matos initially refused to do so.[4] (PPFF ¶¶ 94-95; DPFF ¶ 37). Spiegelhoff holstered his firearm and expanded his baton. (PPFF ¶ 97; DPFF ¶ 38). Mahnke again ordered Matos to his knees, and shortly thereafter Mahnke moved in and took Matos to the ground. (DPFF ¶¶ 40, 41; PPFF ¶ 97). While pinning Matos's body to the ground, Spiegelhoff, Principe, Keland, and Mahnke placed Matos in handcuffs. (PPFF ¶ 99; DPFF ¶ 42). Matos informed the officers that he was armed, and officers removed his firearm. (DPFF ¶ 43; PPFF ¶ 102). As the RPD

---

[4] The parties dispute Matos's precise response to Spiegelhoff's order to kneel. Matos alleges that he told officers he was an officer and attempted to show his identification. (PPFF ¶ 94). Defendants allege that Matos stated only that he was not going to kneel. (DPFF ¶ 37).

-5-

officers brought Matos to his feet, Sergeant Don Wheeler of the Racine County Sheriff's Department arrived and informed the defendant officers on the scene that Matos was part of an undercover narcotics operation.[5]  (DPFF ¶ 44; PPFF ¶¶ 107-09).  Matos was uncuffed and released.  (DPFF ¶ 45).  After the incident, Matos was "scraped up," with a rash and abrasion on his knee.  (PPFF ¶ 111).

## ANALYSIS

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those facts that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 256-57.  A party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial and may not rely on allegations or denials of the adverse party's pleading.  Fed.R.Civ.P. 56(e).  In conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party.  *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915

---

[5] Wheeler was also working undercover with the task force, and was called to the scene by Barrows.  (PPFF ¶ 107).

(7th Cir. 2006). In order to prevail under 42 U.S.C. § 1983, a plaintiff must establish that the defendants deprived him or her of a federal constitutional right, and that the defendants acted under color of state law.[6] *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996).

## I. Fourth Amendment Illegal Arrest Claim

Defendants' argue that they are entitled to judgment as a matter of law on Matos's claim that his arrest was illegal under the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. Amend. IV. A seizure under the Fourth Amendment may come in the form of an investigative detention or an arrest. *See United States v. Adamson*, 441 F.3d 513, 520-21 (7th Cir. 2006). Because the parties apparently do not dispute that Matos was subjected to an arrest, rather than a detention pursuant to a so-called *Terry* stop, the court considers Matos to have been arrested. *See id.* (distinguishing an investigative detention requiring reasonable suspicion, from an arrest requiring probable cause). In order to effectuate an arrest without a warrant, a law enforcement officer must have probable cause. *See Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). A finding of probable cause creates an absolute defense to an illegal arrest claim brought pursuant to 42 U.S.C. § 1983. *Id.*

---

[6] The parties do not dispute that officers in this case were acting under color of state law.

Case 2:06-cv-01011-JPS    Filed 01/23/09    Page 7 of 21    Document 46

Probable cause exists if a reasonably prudent person, under the circumstances, would be warranted in believing "that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citations omitted). Probable cause requires more than reasonable suspicion, but less than the evidence needed to support a conviction. *See Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). In evaluating the circumstances, the court must "step into the shoes of a reasonable person in the position of the officer." *Wheeler*, 539 F.3d at 634. (citation omitted). However, probable cause is not found from the subjective reasoning of the arresting officer, but rather from the objective conclusions that the officer could have drawn under the circumstances. *See Holmes*, 511 F.3d at 679 (citations omitted).

As long as probable cause exists, an officer may arrest a person, without violating the Fourth Amendment, even for very minor criminal offenses committed in the officer's presence. *See Virginia v. Moore*, 128 S.Ct. 1598, 1604 (2008) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). A determination of probable cause is generally a mixed question of fact and law that must be left to a jury "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.* (citation omitted); *see Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003). However, when the facts relating to "what happened" are not at issue, determining probable cause is a question for the court to resolve as a matter of law. *See Lamz*, 321 F.3d at 684 (citation omitted).

-8-

Here, defendants argue that Matos's arrest was not illegal because probable cause existed. Specifically, defendants assert that Matos was double parked on Douglas Avenue, in violation of a Wisconsin traffic law. Upon Officer Spiegelhoff witnessing Matos's vehicle double parked, defendants argue that Spiegelhoff gained probable cause and was granted authority to arrest Matos under Wisconsin law. Defendants claim that Matos violated the following traffic law:

> In parallel parking, a vehicle shall be parked facing in the direction of traffic with the right wheels within 12 inches of the curb or edge of the street when parked on the right side and with the left wheels within 12 inches of the curb or edge of the street when parked on the left side. In parallel parking, a vehicle shall be parked with its front end at least 2 feet from the vehicle in front and with its rear end at least 2 feet from the vehicle in the rear, unless a different system of parallel parking is clearly indicated by official traffic signs or markers.

Wis. Stat. 346.54(1)(d). The statute also states that "[n]o person shall stop or leave a vehicle standing in violation of this section." Wis. Stat. § 346.54(2). Under Wisconsin law, an officer is authorized to arrest a person without a warrant "for the violation of a traffic regulation if the traffic officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation." Wis. Stat. § 345.22. Defendants also argue that Spiegelhoff's later suspicion that Matos was impersonating a police officer further solidified Spiegelhoff's belief that Matos was committing at least one crime.

Matos responds that defendants have not shown Matos violated Wis. Stat. § 346.54(1)(d). Matos argues that he did not violate the traffic law defendants cite because he was an undercover police officer and he had been stopped for less than

Case 2:06-cv-01011-JPS   Filed 01/23/09   Page 9 of 21   Document 46

one minute. Matos further argues that even if Officer Spiegelhoff had reasonable grounds to believe that Matos was violating a traffic law when he first pulled his squad car up next to Matos's vehicle, Spiegelhoff could not have reasonably held the same belief after Matos told Spiegelhoff he was a police officer.

From the outset, the court notes that defendants' reliance in their brief on Wisconsin state law and Wisconsin state court precedent on the question of probable cause is somewhat misplaced. When considering whether a warrantless search or seizure of a person violates the Fourth Amendment, state laws authorizing a law enforcement official to make an arrest are largely irrelevant. *See Virginia v. Moore*, 128 S.Ct. 1598, 1604-05 (2008). This is derived from the principle that states may choose to enact statutes that are more protective of a person's rights than the Fourth Amendment requires. *See id.* at 1605. Therefore, whether or not Matos's arrest complied with Wisconsin state law is not dispositive to Matos's Fourth Amendment illegal arrest claim.

Viewing the facts as presented by the parties in a light most favorable to Matos, the court is unable to conclude that Officer Spiegelhoff and the other defendant officers lacked sufficient probable cause prior to arresting Matos. To the contrary, the facts establish that Spiegelhoff had probable cause to arrest Matos. The parties agree that Spiegelhoff witnessed Matos in the driver's seat of a vehicle double parked on Douglas Avenue. Upon witnessing Matos double parked, Spiegelhoff had reason to believe that Matos had violated a traffic law, specifically

-10-

Wis. Stat. § 346.54. Matos's argument that he had been stopped for less than one minute before Spiegelhoff arrived does not negate the fact that a violation of a traffic law occurred in Spiegelhoff's presence. Nor has Matos provided the court with any authority for his assertion that his mere status as an undercover police officer would vitiate probable cause to believe that he had violated a traffic law. Even if the objective circumstances would have led a reasonable officer to believe that Matos was in fact an undercover police officer, it does not necessarily follow that the same reasonable officer would have concluded that Matos was thereby authorized to illegally stop or park his vehicle.

The court need not determine whether the defendant officers had probable cause to believe that Matos was impersonating a police officer, because any such probable cause would be cumulative. Spiegelhoff's subjective belief that Matos was impersonating a police officer, however reasonable such a belief may have been, does not change the objective circumstances of how Matos operated his vehicle. Therefore, because defendants' arrest of Matos was supported by probable cause, the court grants defendants' motion for summary judgment and dismisses Matos's illegal arrest claim.

## II.    Fourth Amendment Excessive Force Claim

The court now turns to Matos's excessive force claim. Claims of excessive force by law enforcement during a stop or arrest are measured under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395

-11-

(1989); *see also Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The reasonableness of the force used to carry out an arrest depends on the totality of the circumstances, and requires a balancing of the "nature and quality of the intrusion" with the "government interests at stake." *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997) (quoting *Graham*, 490 U.S. at 395). The circumstances surrounding the use of force are judged on the basis of a reasonable officer on the scene, not 20/20 hindsight. *See Graham*, 490 U.S. at 396. The court recognizes that officers are often required to make split-second judgments, based on "tense, uncertain and rapidly evolving" circumstances. *Id.* at 396-97. As a result, in considering whether police used reasonable force, courts look to the following factors: (1) the severity of the crime; (2) the immediate threat posed to the safety of officers or others; and (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Defendants argue that Matos has not established defendants used excessive force to arrest Matos. Defendants argue that Matos did not comply with police commands, and was generally uncooperative with Spiegelhoff and the other defendant officers. Under such circumstances, defendants claim that the officers' tactics of "directing" Matos to the ground and placing him in handcuffs were reasonable and did not constitute excessive force. Defendants also argue that they are entitled to qualified immunity on Matos's § 1983 claim because the force used by officers was not clearly excessive.

-12-

Matos responds arguing that the defendant officers used excessive force from the moment Matos exited his vehicle during the stop. Matos asserts that he complied with officers' commands, and that officers' were unreasonable in pointing their firearms at him, and in tackling and pinning him to the ground. Matos claims that he never posed a threat to officers and he did not resist arrest.

Because genuine issues of fact remain as to the reasonableness of the force the officer defendants used in this case, the court is unable to conclude at this juncture that defendants are entitled to judgment as a matter of law. At the summary judgment stage, the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (noting that summary judgment is granted sparingly in excessive force cases due to their fact-intensive nature). While the court has determined that probable cause existed for officers to arrest Matos based on the possible violation of a state traffic law, whether or not officers reasonably believed that Matos was impersonating a police officer remains a question open to competing factual inferences. Hence, the court is unable to determine the severity of the crimes that officers could have reasonably believed Matos committed, or the immediate threat posed by Matos. Also, the parties dispute Matos's responses to and compliance with officers' commands during the arrest. Matos asserts that he complied with officers' commands while reiterating that he was a police officer. Defendants assert that Matos was acting evasively by pulling his vehicle forward and

not immediately complying with officers' commands.  Additionally, the parties dispute the force the officer defendants used in taking Matos to the ground and holding him on the ground.  Viewed in a light most favorable to Matos, a reasonable jury could conclude that the defendant officers acted unreasonably in arresting Matos for a traffic law infraction by drawing their firearms, and tackling and pinning Matos to the ground, all after Matos identified himself as a police officer and complied with their commands.

Nor are defendants entitled to qualified immunity on Matos's claim of excessive force.  Even if a plaintiff can establish a §1983 claim, government officials may be entitled to qualified immunity if their actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sledd v. Lindsay*, 102 F.3d 282, 287 (7th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Ellis v. Wynalda*, 999 F.2d 243, 246 n. 2 (7th Cir. 1993); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The threshold question for the court in determining qualified immunity "is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Matos alleges that police drew their firearms and tackled and pinned him to the ground even though he was not resisting, or attempting to flee.   If the facts are viewed in a light most favorable to Matos, the

Case 2:06-cv-01011-JPS   Filed 01/23/09   Page 14 of 21   Document 46

court cannot conclude that the defendant officers used reasonable force.[7] *See Payne v. Pauley*, 337 F.3d 767, 778-79 (7th Cir. 2003) (holding that an officer's use of physical force to arrest a suspect for obstructing an officer where suspect was not resisting, and not threatening officers or anyone else was not objectively reasonable). Therefore, the court finds that Matos's excessive force claim passes the qualified immunity threshold.

The next question is whether, at the time of the arrest, the law of excessive force was sufficiently clear for a reasonable officer to know his or her conduct was prohibited. *See Holmes*, 511 F.3d at 687. The Seventh Circuit has made clear "that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). At the same time, police cannot have the threat of a §1983 action impeding their ability to deal with a dangerous fugitive or escapee within reasonable limits. *Id.* (citations omitted). Here, the court finds that no reasonable officer could have considered it permissible to draw his or her firearm, tackle and pin down a person not resisting arrest or otherwise posing a threat to officers or others. *See e.g.*, *Holmes*, 511 F.3d at 687 (holding clearly established that officer may not slam head of unresisting arrestee into car and grind officer's knee into arrestee's face). Because the court, therefore, concludes that defendant officers are not entitled to

---

[7] As the Fourth Circuit stated, "the use of any significant force, up to and including deadly force, not reasonably necessary to effect an arrest – as where the suspect neither resists nor flees or where the force is used after a suspect's resistance has been overcome or his flight thwarted – would be constitutionally unreasonable." *Kidd v. O'Neil*, 774 F.2d 1252, 1256-57 (4th Cir. 1985).

-15-

qualified immunity, the court denies defendants' motion for summary judgment with respect to Matos's claim of excessive force.

## III.  Equal Protection Claim

Defendants argue that Matos has failed to allege or otherwise develop sufficient facts to sustain an equal protection claim.  The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying "to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV §1.  A plaintiff challenging police conduct under the Equal Protection Clause must show "that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose."  *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001) (citations omitted).  To show a discriminatory effect, a plaintiff must show that he or she is a member of a protected class of individuals, and that he or she was treated differently from other similarly situated members of "the unprotected class."  *Id.* at 636.  To show discriminatory purpose, a plaintiff must show that police officers "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon [a protected class]."  *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)).

Defendants argue that Matos has shown neither a discriminatory effect from the defendant officers' actions, nor a discriminatory purpose.  Defendants assert that Matos has not shown that RPD officers treated Matos differently from any other

-16-

similarly situated individual who is not a member of a protected class. Defendants also assert that Matos has only provided his own speculation as to the defendant officers' discriminatory intentions in arresting Matos.

Matos responds arguing that a reasonable jury could infer both a discriminatory effect and purpose. Matos asserts that Officer Spiegelhoff knew Matos and Francis were black before pulling up behind Matos's vehicle and calling for backup. Matos also asserts that a jury could infer that the defendant officers' believed Matos was armed and impersonating an officer because of his race. From that inference, Matos argues, a jury could infer that the defendant officers' decision to conduct a "high-risk" arrest with firearms drawn of Matos was motivated by his race.

Because Matos has not offered sufficient evidence for a reasonable jury to infer either discriminatory effect or purpose, the court is obliged to dismiss Matos's equal protection claim. First, Matos has provided insufficient evidence of discriminatory effect. While Matos likely falls within a protected classification, being a black Hispanic-American, Matos has provided no evidence whatsoever that the treatment he received from defendants was different from any other similarly situated individuals who are not part of a protected class. Moreover, Matos's evidence of discriminatory intent would require a jury to speculate, rather than to infer. Matos essentially argues that every decision the defendant officers made during the stop and his arrest can be attributed to his race merely because the arresting officers

Case 2:06-cv-01011-JPS   Filed 01/23/09   Page 17 of 21   Document 46

knew he and his partner were black. Matos has not provided evidence showing a causal link between his race and the decisions made by defendant officers on the evening of his arrest. Therefore, the court grants defendants' motion for summary judgment with respect to Matos's equal protection claim, and his equal protection claim is dismissed.

## IV.    Negligence Claim

Defendants also argue that they are entitled to discretionary act immunity from Matos's negligence claim under Wisconsin law. Wisconsin statute provides the following limitation on claims against governmental bodies and officials:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Wis. Stat. §893.80(4). This statute, along with the common law, has been interpreted to grant public officers immunity "for discretionary actions performed within the scope of their duties." *Werth v. Bd. of Dir. of Pub. Sch. of City of Milwaukee*, 472 F.Supp.2d 1113, 1130 (E.D.Wis. 2007) (citing *Sheridan v. City of Janesville*, 474 N.W.2d 799 (Wis.Ct.App. 1991)). Discretionary acts do not include the exercise of ministerial duties, but generally do include a police officer's conduct in effectuating an arrest. *See Sheridan*, 474 N.W.2d at 801-03; *Lifer v. Raymond*, 80 Wis.2d 503, 508-09 (1977). Matos's complaint alleges that the defendant officers

-18-

negligently stopped and arrested Matos. In his opposition brief, Matos has not contested defendants' claim that they are immune from such a claim. Therefore, the court finds that defendants are immune, and accordingly dismisses Matos's negligence claim.

## V. Defendants' Motion to Strike

Finally, defendants move, pursuant to Fed.R.Civ.P. 12(f), to strike Matos's reply in support of his factual background, as well as the affidavits of Sarah F. Kaas and Antonio Matos. Defendants argue that Matos was not entitled to file a reply to defendants' response to Matos's proposed facts. Defendants also claim that the Kaas and Matos affidavits were filed in an untimely manner. Matos responds arguing that defendants were not entitled to file a reply to Matos's response to defendants' original proposed findings of fact. Since defendants filed a reply, Matos argues that he should be entitled to file a reply.

While the court did not rely on the filings defendants seek to have stricken in making its summary judgment determination, the court does find it necessary to clarify the local rules. Under Civil Local Rule 56.2, a party moving for summary judgment must include either a stipulation of facts, the movant's proposed findings of fact in numbered paragraph form or a combination of the two. A party opposing the motion for summary judgment must include specific responses to the movant's proposed findings, and the nonmoving party may also include additional factual

propositions relevant to the motion. Finally, the movant may respond to any additional factual propositions put forth by the nonmoving party.

Here, defendants filed proposed findings of fact with their motion for summary judgment. (Docket #22). Matos filed a brief in opposition to the motion which included one hundred thirty-four numbered factual propositions. (Docket #25). On the same day, Matos filed a separate response to defendants' proposed findings of fact, which also included additional proposed facts. (Docket #26). Defendants then filed their reply brief in support of their motion and a separate response to the factual propositions set forth in Matos's opposition brief. (Docket #30 and #31). Defendants also filed a separate response to the additional facts set forth in Matos's response to defendants' original proposed findings. (Docket #32). At that point, the court considers both parties to have exhausted their opportunity to set forth the facts of this case. However, it appears that Matos sought to have the last word on the matter and filed an additional reply in support of his factual propositions. (Docket #35). The local rules do not contemplate that the parties will respond *ad infinitum* to each other's proposed findings of fact. To allow for such a construction would obliterate the usefulness of L.R. 56.2. Matos placed additional proposed facts in both his opposition brief and in his response to defendants' proposed findings. Defendants responded to these proposed facts in two separate filings. (Docket #31 and #32). While this may not have been the easiest way to respond, the court considers defendants to have complied with L.R. 56.2. However, the court finds no basis for

-20-

Matos's reply to defendants' response or the accompanying affidavits. Therefore, the court grants defendants' motion to strike.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment (Docket #20) be and the same is hereby **GRANTED** in part, and **DENIED** in part;

**IT IS FURTHER ORDERED** that plaintiff's illegal arrest claim under 42 U.S.C. § 1983 and plaintiff's negligence claim be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that defendants' motion to strike (Docket #40) be and the same is hereby **GRANTED**; plaintiff's reply in support of his factual background (Docket #35), the affidavit of Sarah F. Kaas (Docket #36) and the affidavit of Antonio Matos (Docket #37) shall be stricken.

Dated at Milwaukee, Wisconsin, this 23rd day of January, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-21-